# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

PETER DESILVA, *et al.*,

    Plaintiffs,

      v.

SHAUN DONOVAN, *in his capacity as Secretary, U.S. Department of Housing and Urban Development*, *et al.*,

    Defendants.

**Civil Action No. 14-271 (CKK)**

## MEMORANDUM OPINION
(February 25, 2015)

Plaintiffs, a former owner of property at the Skyland Shopping Center in Southeast Washington and three former tenants of the shopping center, filed suit against the Department of Housing and Urban Development ("HUD") and Shaun Donovan, Secretary of HUD, (collectively, "Defendants") seeking review under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* of actions taken by Defendants concerning the Skyland Shopping Center development project in Southeast Washington, D.C. Presently before the Court is Defendants' Motion to Dismiss for lack of jurisdiction. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that Plaintiffs lack standing to pursue their claims. Accordingly, Defendants' Motion to Dismiss is GRANTED.

## I.    BACKGROUND

For the purposes of this motion, the Court accepts as true the well-pleaded allegations in

---

[1] Defendants' Motion to Dismiss ("Defs.' Mot."), ECF No. [11]; Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n"), ECF No. [16]; Defendants' Reply in Support of Defendants' Motion to Dismiss ("Defs.' Reply"), ECF No. [20].

Plaintiffs' Complaint.  In 1998, the Council of the District of Columbia created the National Capital Revitalization Corporation ("NCRC"), which subsequently entered into an agreement with four private corporations to redevelop the Skyland Shopping Center ("Skyland") in Southeast Washington.  Compl. ¶¶ 15, 18; *Duk Hea Oh v. National Capital Revitalization Corp.*, 7 A.3d 997, 1000 (D.C. 2010).  Plaintiff alleges that NCRC spent $28 million of HUD Community Development Block Grant ("CDBG") funds to proceed with the project.  Compl. ¶ 20.

On July 8, 2005, NCRC filed six condemnation complaints in the District of Columbia Superior Court against property owners at Skyland.  *Id*. ¶ 19.  One of the properties was owned by Plaintiff Peter DeSilva.  *Id.* ¶ 5.  Plaintiffs Rose and Joseph Rumber and Plaintiff Marion Fletcher were tenants who operated businesses in the Skyland Shopping Center.  *Id.* ¶¶ 6-7.  In 2011, the taking of Plaintiff DeSilva's property by eminent domain was upheld by the District of Columbia Court of Appeals.  *See DeSilva et al. v. District of Columbia*, 13 A.3d 1191, 1193 (D.C. 2011).  Plaintiffs allege that payments that were made to them "for taking their property and for relocation or closing their businesses, did not fully compensate them for their losses." Compl. ¶ 178.

Plaintiffs filed the present Complaint on February 21, 2014, generally alleging that "HUD has acted to fund the Skyland project and has failed to monitor the Skyland project to ensure that the statutory and regulatory requirements have been met."  Pls.' Opp'n at 2.  Specifically, Plaintiffs' Complaint alleges seven causes of action under the APA:

- Count 1:  HUD has violated the APA by "providing and permitting the funding of the Skyland project and inadequate and untimely monitoring of the Skyland project," Compl. ¶¶ 234-36;

- Count 2: HUD has violated the APA by (a) permitting funding for the Skyland project even though the project has not met a national objective, and by (b) failing to monitor the project to ensure a national objective was met, *id.* ¶¶ 237-40;

- Count 3: HUD has violated the APA because its "actions and monitoring of the Skyland project . . . have been unlawfully withheld and unreasonably delayed," *id.* ¶¶ 241-42;

- Count 4: HUD has violated the APA by permitting "the use of CDBG funds for the Skyland project in violation" of the restrictions concerning "the use of CDBG funds to support any Federal, state or local project that seeks to use the power of eminent domain, unless the power is sought for certain public purposes," *id.* ¶¶ 243-45;

- Count 5: HUD has violated the APA by failing to ensure that the appraisal guidelines were followed in the taking of property at Skyland, including the property taken from Plaintiff DeSilva, *id.* ¶¶ 246-49;

- Count 6: HUD has violated the APA by failing "to require compliance with URA [(Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970)] regulations and requirements, including 49 C.F.R. § 24.5 and § 24.9, for property acquisitions and for relocations," *id.* ¶¶ 250-52; and

- Count 7: HUD has violated the APA by its use of risk-based monitoring, "monitoring [that] may occur too late or too infrequently to prevent or correct problems or lack of compliance with applicable laws and regulations, *id.* ¶¶ 253-56.

Plaintiffs seek mandatory injunctions ordering HUD to (a) "comply with the pertinent statutes, requirements and regulations concerning the Skyland project;" (b) "ensure that grantees adhere to applicable CDBG and federal statutes, requirements and regulations in the Skyland project;" and (c) "provide mitigation and other relief to plaintiffs." *Id.* at 64, ¶¶ A-C. Plaintiffs

further request that the Court "issue a declaration" that HUD "must ensure that the District complies with pertinent statutes, requirements and regulations before the District transfers the Skyland properties to private developers," and that "HUD must advise the District to reimburse its CDBG program account in the amount used on the Skyland project with funds from a non-Federal source." *Id.* at 65, ¶¶ D-E.

## II.    LEGAL STANDARD

Pursuant to Article III of the Constitution, Defendants move to dismiss this action on the basis that this Court has no jurisdiction because Plaintiffs lack standing. "Article III of the Constitution limits the jurisdiction of federal courts to 'actual cases or controversies between proper litigants.' " *Mendoza v. Perez,* 754 F.3d 1002, 1010 (D.C. Cir. 2014) (quoting *Fla. Audubon Soc'y v. Bentsen,* 94 F.3d 658, 661 (D.C. Cir. 1996)).  Because standing is a "threshold jurisdictional requirement," a court may not assume that Plaintiff has standing in order to proceed to evaluate a case on the merits. *Bauer v. Marmara,* 774 F.3d 1026, 1031 (D.C. Cir. 2014).

Although Defendants do not clearly indicate in their Motion that they are moving for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), it is well established that motions to dismiss for lack of standing are properly considered as challenging the Court's subject matter jurisdiction and should be reviewed under Rule 12(b)(1). *See Haase v. Sessions,* 835 F.2d 902, 906 (D.C. Cir. 1987) (explaining that "the defect of standing is a defect in subject matter jurisdiction"); *see also City of Harper Woods Employees' Retirement Sys. v. Olver,* 577 F.Supp.2d 124, 128 (D.D.C. 2008) ("In this jurisdiction, a motion to dismiss for lack of standing is treated as a challenge to the subject matter jurisdiction of the court, and is properly analyzed under Rule 12(b)(1)."), *aff'd* 589 F.3d 1292 (D.C. Cir. 2009).  Under Rule 12(b)(1), the

plaintiff bears the burden of establishing that the court has jurisdiction. *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13 (D.D.C. 2001) (a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). A court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *Koutny v. Martin,* 530 F.Supp.2d 84 (D.D.C. 2007) ( "[A] court accepts as true all of the factual allegations contained in the complaint . . . and may also consider 'undisputed facts evidenced in the record.' ") (internal citations omitted).  However, " 'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge,* 185 F.Supp.2d at 13–14 (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350).

## III.   DISCUSSION

"In order to establish the existence of a case or controversy within the meaning of Article III, [a] party must meet certain constitutional minima," including "the requirement that . . . it has standing to bring the action." *Gettman v. DEA,* 290 F.3d 430, 433 (D.C. Cir. 2002). The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  First, the plaintiff must have suffered an "injury-in-fact," that is, " 'an invasion of a legally protected interest' that is (i) 'concrete and particularized' rather than abstract or generalized, and (ii) 'actual or imminent' rather than remote, speculative, conjectural or hypothetical." *In re Navy Chaplaincy,* 534 F.3d 756, 759–60 (D.C. Cir. 2008) (quoting *Lujan,* 504 U.S. at 560).  Second, the asserted injury must be "fairly traceable to

the challenged action of the defendant." *Lujan,* 504 U.S. at 560 (citation omitted).  Third, the plaintiff must demonstrate redressability: "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Id.* at 561 (citation omitted).

In the present Motion to Dismiss, Defendants do not challenge the injury or traceability elements of standing.  Defendants concede that Plaintiffs were injured when their property was taken by eminent domain and when they, allegedly, did not receive sufficient compensation for their loss of this property.  Defs.' Mot. at 11.  Defendants also agree to assume that Plaintiffs' injury "was caused by HUD's failure to insure that proper procedures were followed at Skyland."[2]  *Id.*  Instead, Defendants focus their standing argument on whether Plaintiffs' injuries would be redressed by a favorable decision on Plaintiffs' Complaint.  Because the Court finds that Plaintiffs' injuries are not redressable, there is no need to address the injury or causation elements of standing.

Defendants contend that Plaintiffs' injuries are not redressable because Plaintiffs seek primarily forward-looking injunctive relief while their injuries are all in the past with no "likelihood of future harm from the same conduct that they allege injured them in the past." *Id.* at 12 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1984)).  To the extent Plaintiffs ask the Court to order HUD "to provide mitigation and other relief to plaintiffs" to remedy their past injuries, Defendants argue that this action will not redress Plaintiffs' injuries because the "only relief available to provide mitigation to [Plaintiffs] is an award of money damages" and "review under the APA is permitted only for actions 'seeking relief other than money damages.' " *Id.* at

---

[2] Defendants do not fully concede this point, however, and state in their Motion to Dismiss that "there is a problem of causation in plaintiffs' claims" because "[i]t is speculative whether a change in HUD's actions would have lessened plaintiffs' alleged injuries."  Defs.' Mot. at 11. However, Defendants contend, and the Court agrees, that "this point need not detain [them], because plaintiffs' claims suffer from another fatal defect: they are not redressable."  *Id.*

15-16 (quoting 5 U.S.C. § 702).

Defendants are correct that "where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). However, Plaintiffs respond that they have standing because their injuries are not simply in the past, but ongoing and, thus, redressable through injunctive relief. Plaintiffs attempt to analogize their situation to that at issue in *Dearth v. Holder*, where the United States Court of Appeals for the District of Columbia Circuit found the plaintiff suffered an ongoing injury and thus had standing to challenge a firearm statute and seek injunctive relief because the government continued to deny the plaintiff the ability to purchase a firearm. Pl.'s Opp'n at 23-24. Plaintiffs contend that their injuries are ongoing because "[t]hey have lost their property and business" and "Mr. DeSilva was given an appraisal which had not been subject to an appraisal review." *Id.* at 24. However, Plaintiffs' argument amounts to no more than a claim that Plaintiffs are still *feeling* injured from a past action; Plaintiffs do not allege that HUD's continuing failure to monitor or other actions or inactions threaten to injure them again. Indeed, Plaintiffs' property has been taken by eminent domain and a jury has awarded them compensation for the taking, a decision that is final and past. In *Dearth*, by contrast, the plaintiff indicated that he was continuing to seek to purchase a firearm in the face of laws that prohibited him from purchasing a firearm. *Dearth*, 641 F.3d at 503. As Defendants explain, "[t]he fact that the plaintiffs continue to be unhappy with these actions does not convert their 'injury' into an 'ongoing' one." Defs.' Reply at 3.

The present case is more closely analogous to *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), where the Supreme Court found that a plaintiff who had been subjected to a chokehold by the police and sought to enjoin the police from using chokeholds did not have standing

because there was not a likelihood of future harm from the same injury-causing conduct. 461 U.S. at 111. Here, Plaintiffs allege that HUD's actions and inactions caused them to unlawfully lose their property. Plaintiffs now seek injunctive relief requiring, among other things, HUD "to comply with the pertinent statutes, requirements and regulations concerning the Skyland project." Compl. at 64, ¶ A. However, there is no indication in the Complaint that Plaintiffs would continue to be injured by HUD failing to monitor the ongoing Skyland project or failing to require the District to comply with federal regulations. Plaintiffs' property has been taken and the compensation decision is final. There is no likelihood that Plaintiffs would again lose their Skyland property or receive inadequate compensation for the taking of their property if HUD was not ordered to monitor the project and require the District's compliance with all relevant regulations. Accordingly, the Court finds that Plaintiffs do not have standing to the extent they are seeking forward-looking injunctive relief regarding HUD's monitoring and control of the Skyland project to remedy their past—not ongoing—injury. Any such relief, if granted by the Court, would not redress Plaintiffs' injury.

To the extent that Plaintiffs are seeking what could be characterized as backward-looking relief that would mitigate or otherwise relieve their past injury, a favorable decision by this Court on the counts alleged by Plaintiffs would not be able to provide that relief. First, as Plaintiff DeSilva's property has been taken by judicial order and the other three Plaintiffs are no longer operating businesses at Skyland, the appropriate relief to mitigate Plaintiffs' past injury would be an award of monetary damages. However, Defendants are correct that plaintiffs who seek review under the APA may only seek relief "other than money damages." 5 U.S.C. § 702.

In responding to the argument that there is no relief available to Plaintiffs because a plaintiff may not be awarded money damages under the APA, Plaintiffs contend that HUD

CDBG regulations "provide authority and support for the HUD Secretary to fashion appropriate relief for Plaintiffs" and that it is "the prerogative of the agency to decide in the first instance how best to provide relief" for a claim brought under the APA.  Pl.'s Opp'n at 25 (quoting *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013)).  Plaintiffs propose a number of non-monetary remedies that the HUD Secretary could provide, including "requir[e] the District to show that it is in compliance with HUD regulations, including the requirement that the Skyland project meets a national objective;" "conduct a complete review and audit of the Skyland project," including "a review concerning whether CDBG funds had been spent on eminent domain projects;" "require the District to comply with appraisal regulations;" and "order a study or investigation of HUD's management of appraisals and appraisal reviews for acquisitions that use HUD funds."  *Id.* at 25-26.

Plaintiffs are correct that the regulations relating to the CDBG program permit HUD to take actions "to mitigate, to the extent possible, the adverse effects or consequences of the performance deficiency."  24 C.F.R. § 570.910(a).  However, a closer review of these regulations reveals that the mitigating actions they authorize involve corrective actions by HUD against the grantee—here, the District of Columbia.  *See* § 570.910(b).  Just as HUD's "oversight is limited to ensuring grantees adhere to applicable CDBG and federal requirements," *see* Pl.'s Ex. 6 (HUD letter), ECF No. [16-1], the corrective actions HUD can take when a performance deficiency is identified are limited to requiring certain actions of the grantee, such as repayment of CDBG funds or development of a proposal for actions to "correct[] or remov[e] . . . the causes of the deficiency."  24 C.F.R. § 570.910(b).  None of the regulations authorize HUD to provide any form of direct relief to Plaintiffs.  Indeed, Plaintiffs themselves seem to recognize the nature of these relief regulations as all of their proposals for non-monetary relief involve HUD requiring

an action of the District of Columbia or reviewing the activities of the District.

It is unclear to the Court how any of the mitigating actions authorized by the HUD regulations or any of Plaintiffs' proposed forms of relief would remedy Plaintiffs' past injuries—loss of property and allegedly insufficient compensation.  Plaintiffs' proposals for reviews and audits are, again, largely forward-looking. To the extent a review or audit would reveal a deficiency in the past administration of the Skyland project, the HUD regulations only authorize HUD to provide relief in the form of corrective actions against the District of Columbia, such as requiring the District to repay CDBG funds.  Even if the Skyland project is, as Plaintiffs allege, heavily or entirely dependent on CDBG funds, it is highly speculative that requiring the District to repay such funds to HUD would place Plaintiffs back into the Skyland Shopping Center or increase the compensation Plaintiffs received for the taking of their property.  The District of Columbia alone was responsible for taking the eminent domain action against Plaintiffs.  This action became final four years ago and the Skyland project has since advanced.  The "relevant question for standing . . . is not whether relief is *certain*, but only whether it is *likely*, as opposed to merely speculative."  *Bennett*, 703 F.3d at 589.  Here, there is no reason to believe that Plaintiffs' injuries would be redressed by any of the mitigating actions HUD is authorized to take pursuant to 24 C.F.R. 570.910(b).

The HUD regulations at issue in this case sharply contrast with the HUD regulations that the D.C. Circuit found supported standing in *Bennett v. Donovan*—a case on which Plaintiffs heavily rely.   In *Bennett,* the plaintiffs were surviving spouses whose homes were being foreclosed upon by banks with whom their deceased spouses had held HUD-insured reverse-mortgages.  The plaintiffs sought a declaratory judgment that HUD's "regulation defining the conditions under which it would insure a reverse-mortgage agreement was inconsistent with the

applicable statute." 703 F.3d at 584. Although the Court of Appeals found that the third-party bank could still foreclose upon the plaintiffs' homes even if the court found in plaintiffs' favor, the Court of Appeals held that the plaintiffs had standing because "HUD ha[d] additional statutory means to provide complete relief" that "would remove speculation as to independent third-party actions." *Id.* at 588. Specifically, a statutory provision permitted HUD to accept assignment of the mortgage, pay off the balance, and then decline to foreclose against the plaintiffs. *Id.* No such statutory or regulatory provision exists in the present case to directly connect HUD to Plaintiffs such that HUD could remedy the loss of property Plaintiffs' have experienced due to HUD's alleged monitoring shortcomings. Although HUD has greater control over the District of Columbia's actions than it did over the third-party bank in *Bennett*, HUD does not have the authority to take any actions towards the District of Columbia that would likely place Plaintiffs back into the Skyline property or increase their compensation for the taking of their property. Accordingly, the Court finds that Plaintiffs' injuries would not be redressable by a favorable decision of this Court.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs lack standing to pursue their claims against Defendants. Accordingly, Defendants' Motion to Dismiss is GRANTED and Plaintiffs' Complaint is DISMISSED.

An appropriate Order accompanies this Memorandum Opinion.


_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE