**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PETER DESILVA, *et al.*,
*Plaintiffs*,
v.
JULIÁN CASTRO, Secretary, U.S. Department of House and Urban Development, et al.,
*Defendants*.[1]

Civil Action No. 14-271 (CKK)

**MEMORANDUM OPINION**
(January 5, 2016)

Plaintiffs, a former owner of property at the Skyland Shopping Center in Southeast Washington and three former tenants of the shopping center, filed suit against the Department of Housing and Urban Development ("HUD") and Shaun Donovan, Secretary of HUD, (collectively, "Defendants") seeking review under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* of actions taken by Defendants concerning the Skyland Shopping Center development project in Southeast Washington, D.C. On February 25, 2015, the Court granted Defendants' Motion to Dismiss, finding that Plaintiffs lack standing to pursue their claims against Defendants. *See* Mem. Op. & Order, ECF Nos. [22], [23]. Presently before the Court is Plaintiffs' Motion for Reconsideration of that decision. Upon consideration of the pleadings,[2]

[1] Pursuant to Fed. R. Civ. P. 25(d), the current Secretary of Housing and Urban Development, Julián Castro, shall be substituted for former Secretary Shaun Donovan. *See* Fed. R. Civ. P. 25(d).

[2] Plaintiffs' Motion for Reconsideration (Pls.' Mot.), ECF No. [24]; Defendants' Opposition ("Defs.' Opp'n), ECF No. [25]; Plaintiff's Memorandum of Supplemental Authorities (Pls.' Supp. Mem.), ECF No. [26]; and Plaintiffs' Notice of Filing (Sept. 11, 2015), ECF No. [27]. The Court also notes that the Clerk misidentified Plaintiffs' [26] Memorandum of Supplemental Authorities as a "Supplemental Motion for Reconsideration" on the docket. The Court shall direct the Clerk to correct the docket so that the docket reflects Plaintiffs' submission as supplemental memorandum, rather than a supplemental motion.

the relevant legal authorities, and the record as a whole, the Court DENIES Plaintiffs' Motion for Reconsideration for the reasons stated below and for the reasons stated in the Court's [23] Memorandum Opinion dated February 25, 2015, which the Court fully incorporates and makes part of this Memorandum Opinion.

## I. LEGAL STANDARD

Plaintiffs' Motion for Reconsideration requests relief under Federal Rules of Civil Procedure 59 and 60. *See* Pls.' Mot., ECF No. [24], at 1.

Rule 59(e) permits a party to file a motion to alter or amend a judgment within 28 days of the entry of that judgment. Fed. R. Civ. P. 59(e). Motions under Rule 59(e) are "disfavored" and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from a final judgment. *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001). Rule 59(e) motions are "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted). Rule 59(e) does not provide a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting C. Wright & A. Miller, Federal Practice and Procedure § 2810.1 (2d ed.1995)).

Rule 60(b), on the other hand, allows a party to seek relief after entry of a final judgment for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5)

the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). The party seeking relief under Rule 60(b) bears the burden of proof to show that he or she is entitled to the relief. *Norris v. Salazar*, 277 F.R.D. 22, 25 (D.D.C. 2011). "[T]he decision to grant or deny a rule 60(b) motion is committed to the discretion of the District Court." *United Mine Workers of Am. 1974 Pension v. Pittston Co.*, 984 F.2d 469, 476 (D.C. Cir. 1993). In exercising this discretion, the Court "must balance the interest in justice with the interest in protecting the finality of judgments." *Summers v. Howard Univ.*, 374 F.3d 1188, 1193 (D.C. Cir. 2004).

Regardless of the Rule pursuant to which reconsideration is sought, "it is well-established that 'motions for reconsideration,' whatever their procedural basis, cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.' " *Estate of Gaither ex rel. Gaither v. District of Columbia,* 771 F. Supp. 2d 5, 10 (D.D.C. 2011) (quoting *SEC v. Bilzerian,* 729 F. Supp. 2d 9, 14 (D.D.C. 2010)); *id.* at 10 n.4 (explaining that the same principle extends to motions under Rule 59(e), 60(b), and 54(b)). Additionally, the party seeking reconsideration bears the burden of establishing that such relief is warranted under the circumstances. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 226 (D.D.C. 2011) ("The party seeking relief from a judgment bears the burden of demonstrating that it satisfies the prerequisites for such relief.).

## II. DISCUSSION

In Defendants' original Motion to Dismiss, Defendants moved the Court to dismiss Plaintiffs' claims on the basis that plaintiffs lack standing to bring the instant suit. *See* Defs.'

Mot. to Dismiss, ECF No. [11], at 10. Specifically, Defendants argued that Plaintiffs have not met the requirement of "redressability" under the three-element test for constitutional standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). *See* Defs.' Mot. to Dismiss, ECF No. [11], at 10-11. Plaintiffs countered that HUD can determine how to redress Plaintiffs' injuries and that the matter should be remanded to HUD so it can fashion appropriate relief. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. [16], at 24, 26. In the Court's February 25, 2015 decision, the Court agreed with Defendants that Plaintiffs' injuries are not redressable by a favorable decision of this Court. *See* Mem. Op., ECF No. [23], at 11.

Plaintiffs' Motion for Reconsideration raises many of the same arguments previously made by Plaintiffs in their opposition to Defendants' Motion to Dismiss and rejected by the Court in its Memorandum Opinion issued on February 25, 2015. For instance, Plaintiffs reiterate their beliefs that Plaintiffs' injuries should be redressable under *Bennett v. Donovan*, 703 F.3d 582 (D.C. Cir. 2013) and that HUD would be able to redress their injuries through mitigating actions authorized under 24 C.F.R. § 570.910(a), (b). *Compare* Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. [16], at 24-26 *with* Pls.' Mot., ECF No. [24], at 1-2. The Court has already considered these arguments and addressed them in the Court's Memorandum Opinion issued on February 25, 2015. *See* Mem. Op., ECF No. [23], at 9-11. A motion for reconsideration is not an appropriate vehicle for Plaintiffs to now attempt to reargue their positions on these issues. *See* *Exxon Shipping Co*, 554 U.S. at 485 n.5.

Plaintiffs also contend in their Motion for Reconsideration that the Court's Memorandum Opinion failed to discuss certain findings by HUD in a December 13, 2012 monitoring report based on a review of the Skyland project (the "HUD Monitoring Report"). *See* Pls.' Mot., ECF No. [24], at 4 (citing Compl., ECF No. [1], ¶ 166). Specifically, Plaintiffs cite to the discussion

of Plaintiff DeSilva's property on page 5 of the report, which states in relevant part, "[t]hree appraisals were conducted to determine [the value of Plaintiff DeSilva's property] but no review appraisal was found in the file to verify these values as required by 49 CFR 24.104 . . . The District must produce the review appraisal for HUD to complete its review of this transaction." *Id.* Plaintiffs contend that if "a proper appraisal and appraisal review are conducted, then there may be additional avenues for relief available" to Plaintiffs. *Id.* at 3. According to Plaintiffs, the HUD Secretary could require the District to comply with the appraisal regulations, including the preparation of an appraisal review and the completion of the appraisal review process. *Id.* at 4 (citing 49 C.F.R. § 24.104). Alternatively, Plaintiffs surmise, the HUD Secretary could require that a valid appraisal be conducted for Plaintiffs' property, after which the Secretary and Plaintiff DeSilva could pursue additional remedies and redress if needed. *Id. at 4-5.*

Again, Plaintiffs have rehashed arguments previously made in their opposition to Defendants' Motion to Dismiss and rejected by this Court in its February 25, 2015 Memorandum Opinion. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. [24], at 14. However, because Plaintiffs have spent considerable attention in their Motion for Reconsideration to the HUD Monitoring Report and its discussion of the appraisals of Plaintiffs' property, the Court shall elucidate with more detail its findings issued in its earlier Opinion.

First, Plaintiffs are incorrect in suggesting that the HUD Monitoring Report contemplates affording the relief requested by Plaintiffs. The primary purpose of the HUD Monitoring Report is to ensure that that the District is in compliance with various recordkeeping provisions as part of an effort by HUD to account for the District's expenditures of Community Development Block Grant ("CDBG") funds. *See* HUD Monitoring Report, ECF No. [24-1], at 4 ("The failure to produce these records at the time of the review establishes a basis for HUD to question

virtually all expenditures associated with the Skyland project."). The only corrective actions contemplated by the HUD Monitoring Report involve either the District's reimbursement of funds to HUD or the District's submission of records to HUD. *See id.* at 4-9. In either scenario, any corrective action would be against the District of Columbia and would not concern Plaintiffs. Moreover, the report's findings with regard to the District's acquisition of Plaintiff DeSilva's property are explicitly limited to the District's compliance with certain procedural requirements and do not involve any substantive review of the financial terms of the acquisition. *See id.* at 7 ("Three different findings arise from this review, all related to procedural aspects of [federal statutes], but none involve financial sanctions.").

Second, Plaintiffs' position that HUD's findings in its 2011 Monitoring Report entitles them to relief is undermined by HUD's follow-up findings issued on June 29, 2015—after the Court issued its ruling on Defendants' Motion to Dismiss and after Plaintiffs filed their Motion for Reconsideration. *See* HUD's Response to the District of Columbia's Submission of Documentation Related to HUD's Skyland Shopping Center Monitoring Report (June 29, 2015), ECF No. [27-1]. In response to the HUD Monitoring Report, the District submitted six binders of supporting documentation regarding the development of the Skyland Shopping Center project. *Id.* at 2. On June 29, 2015, after HUD completed its review of the District's submission, HUD issued updated findings, which included a finding that Plaintiff DeSilva "was compensated for [his] property at, or above, the appraised value of [his] property." *Id.* at 9 (listing Plaintiff DeSilva's property as one of the properties for which the owner was appropriately compensated). The June 29, 2015 findings do not indicate that the District is still in noncompliance with the appraisal regulations cited in the 2011 Monitoring Report and do not require any future actions by the District with regard to additional appraisals, or appraisal reviews, of Plaintiff DeSilva's

property. *See id*. In short, HUD's June 29, 2015 findings suggest that HUD has completed its review of the District's acquisition of Plaintiff DeSilva's property and has found that Plaintiff DeSilva was appropriately compensated. *See id.*

Notwithstanding the fact that HUD's most recent findings essentially moot Plaintiffs' request for an additional review by HUD of the District's appraisals of Plaintiff DeSilva's property, the Court reaffirms its holding in its February 25, 2015 Opinion that to the extent that a substantive review would reveal a deficiency in the appraisal process, the applicable regulations only authorize HUD to provide relief in the form of corrective actions against the *District of Columbia* and do not authorize HUD to provide any form of direct relief to *Plaintiffs*. *See* 24 C.F.R. § 570.910(a), (b). *See also* 49 C.F.R. § 24.104. Furthermore, Plaintiffs themselves are unable to identify any form of direct relief that would be available to Plaintiffs. Instead, Plaintiffs speculate that "there may be additional avenues for relief available" if an appraisal review is conducted. Pls.' Mot., ECF No. [24], at 3. Such "speculative relief" is insufficient under *Bennett*—a case discussed at length in the Court's earlier Opinion. *See* Mem. Op., ECF No. [23], at 10-11. As the Court noted in its February 25, 2015 decision, the plaintiffs in *Bennett* sought relief under a statutory provision that permitted HUD to accept assignment of the plaintiffs' mortgage, pay off the balance, and then decline to foreclose against the plaintiffs. *Id.* at 11 (citing *Bennett*, 703 F.3d at 588). The D.C. Circuit held that the plaintiffs had standing because "HUD ha[d] additional statutory means to provide complete relief" to the plaintiffs in a way that "would remove speculation as to independent third-party actions." *Id.* (quoting *Bennett*, 703 F.3d at 588). However, "[n]o such statutory or regulatory provision exists in the present case to directly connect HUD to Plaintiffs such that HUD could remedy the loss of property Plaintiffs have experienced due to HUD's alleged monitoring shortcomings." *Id.*

Furthermore, as the Court observed in its earlier Opinion, "Plaintiffs' property has been taken by eminent domain and a jury has awarded them compensation for the taking, a decision that is final and past." *See id.* at 7. In 2011, the District of Columbia Court of Appeals upheld the taking of Plaintiffs' property by eminent domain and affirmed a jury determination of the appraisal value of the property after considering Plaintiffs' arguments disputing the accuracy and reliability of the District's appraisals of the property. *See DeSilva v. D.C.*, 13 A.3d 1191, 1197-99 (D.C. 2011). In that case, Plaintiffs were provided the opportunity to introduce evidence as to the fair market value of the property and to introduce expert testimony that the District's appraisals of the property used improper comparable sales, used vague and unsubstantiated data and assumptions, and contained "structural flaws." *See id.* at 1195, 1199. After hearing Plaintiffs' arguments, the jury made a determination as to the appraisal value of his property and the court entered a final judgment that was affirmed by the appellate court. *See id.* at 1195. Plaintiffs' efforts to downplay the significance of this jury award as a mere consequence of "litigation tactics undertaken by the District" were not convincing in their opposition to Defendants' Motions to Dismiss and are not convincing now. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. [24], at 14; Pls.' Supp. Mem., ECF No. [26], at 2-3 (characterizing that the District's appraisals of Plaintiffs' property as a "ploy" commonly used by government agencies). As the Court held in its February 25, 2015 Memorandum Opinion, "it is highly speculative" that any action that HUD would be authorized to take under applicable HUD regulations would redress Plaintiffs' injuries, particularly in light of the fact that the parties have already litigated the issue of the appraisal value of Plaintiffs' property and a jury determination on that issue "became final four years ago" after it was upheld by the District of Columbia Court of Appeals. Mem. Op., ECF No. [23], at 10.

Plaintiffs also argue in their Motion for Reconsideration that the Court "was incorrect in assuming" in its Memorandum Opinion that "the appropriate relief to mitigate Plaintiffs' injury would be an award of money damages." *See* Pls.' Mot., ECF No. [24], at 5. Plaintiffs contend the "Court should not transform the claims presented by Plaintiffs into a claim for money damages and thereby make a finding that no relief is available and that there is no redress for the claims." *Id.* In so arguing, Plaintiffs have disregarded the Court's disposition of the money damages issue and disregarded the Court's extensive discussion of the non-monetary claims sought by Plaintiffs. *See* Mem. Op., ECF No. [23], at 8-11. On the issue of money damages, the Court reasoned that "as Plaintiff DeSilva's property has been taken by judicial order and the other three Plaintiffs are no longer operating businesses at Skyland, the appropriate relief to mitigate Plaintiffs' past injury would be an award of monetary damages." *Id.* at 8. However, as the Court correctly noted, "plaintiffs who seek review under the APA may only seek relief 'other than money damages.' " *Id.* (citing 5 U.S.C. § 702). The Court then proceeded to discuss at great length Plaintiffs' arguments as to why Plaintiffs believe they are entitled to *non-monetary* relief under various HUD regulations. *See* Mem. Op., ECF No. [23], at 8-11. In its discussion of Plaintiffs' non-monetary claims, the Court held that "the HUD regulations only authorize HUD to provide relief in the form of corrective actions against the District of Columbia, such as requiring the District to repay CDBG funds." *Id.* at 10. Furthermore, the Court held, "there is no reason to believe that Plaintiffs' injuries would be redressed by any of the mitigating actions HUD is authorized to take pursuant to take pursuant to 24 C.F.R. § 570.910(b)." Accordingly,

the Court reaffirms its holding that Plaintiffs' injuries would not be redressable by a favorable decision by this Court on the claims alleged by Plaintiffs under the APA. *Id.*[3]

Finally, Plaintiffs argue that the Court's February 25, 2015 Memorandum Opinion failed to address allegations in Plaintiffs' Complaint that the records maintained by the D.C. Recorder of Deeds do not indicate that title for the property in question was ever transferred from Plaintiff DeSilva to the District of Columbia. *See* Pls.' Mot., ECF No. [24], at 6 (citing Compl., ECF No. [1], ¶¶ 183-197). According to the Motion for Reconsideration, "Plaintiff DeSilva has an interest in having correct property records that contain his name" and HUD should exercise its oversight authority to "determine whether there are proper deeds and other land records" for Plaintiff DeSilva's property as well as the other Skyland properties. *See id.* Plaintiffs, however, did not advance this argument in their opposition to Defendants' Motion to Dismiss, and it is well settled that a motion for reconsideration is not a "vehicle for presenting theories or arguments that could have been advanced earlier." *Estate of Gaither,* 771 F. Supp. 2d at 10. Furthermore, even if Plaintiffs had raised this argument at an earlier stage, Plaintiff DeSilva still has not demonstrated how he has been injured by the alleged deficiencies in the maintenance of the property records or

[3] Plaintiffs' Motion for Reconsideration also contains an assertion that the Court failed to "acknowledge that Plaintiffs, through undersigned counsel, have spent years in efforts to have HUD perform its oversight duties." *See* Pls.' Mot., ECF No. [24], at 5. It is unclear to the Court what significance Plaintiffs' efforts to communicate with HUD should have on the issue presented in Defendant's Motion to Dismiss, that is, whether Plaintiffs' injuries are redressable by a favorable decision by this Court. In any event, Plaintiffs' argument certainly does not identify an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" that would thereby entitle them to relief under a Motion for Reconsideration. *See Firestone*, 76 F.3d at 1208.

how HUD would have the "statutory means to provide complete relief" to him for any such injury. *Bennett*, 703 F.3d at 588.[4]

The Court finds that Plaintiffs have not met their burden of showing any of the circumstances that would warrant relief from a final judgment under Rule 59(e) or Rule 60(b). Accordingly, the Court reaffirms its February 25, 2015 ruling that Plaintiffs lack standing to pursue their claims against Defendants.

## III. CONCLUSION

For the reasons discussed above and for the reasons stated in the Court's [23] Memorandum Opinion dated February 25, 2015—which the Court fully incorporates and makes part of this Memorandum Opinion—the Court DENIES Plaintiffs' [24] Motion for Reconsideration.

An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[4] In Plaintiffs' discussion of the title records issue, Plaintiffs appear to dispute a statement in the Court's February 25, 2015 Memorandum Opinion that "Plaintiff DeSilva's property has been taken by judicial order." Pls.' Mot., ECF No. [24], at 6. The Court finds Plaintiffs' assertion to be a curious one, given that that the District of Columbia Court of Appeals upheld the taking of this property by eminent domain in 2011. *See* Mem. Op., ECF No. [23], at 2 (citing *DeSilva v. D.C.*, 13 A.3d at 1193). Furthermore, Plaintiffs themselves acknowledge that Plaintiff DeSilva "was injured by the loss of his property," and it is undisputed that Plaintiff DeSilva is no longer the rightful owner of the property that was taken by eminent domain. Pls.' Opp'n to Defs.' Mot. to Dismiss, ECF No. [16], at 14. As Defendants aptly note in their opposition to Plaintiffs' Motion for Reconsideration, "if in fact Mr. DeSilva still owns the property at the Skyland Shopping Center site, despite the eminent domain action, he has remedies to pursue that do not involve this Court." Defs.' Opp'n to Pls.' Mot., ECF No. [25], at 3.